IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

WAYNE MEETZ, individually and on
behalf of all others similarly situated,

      Plaintiff,

        v.

WISCONSIN HOSPITALITY GROUP, LLC,
and PH HOSPITALITY GROUP, LLC,
d/b/a PIZZA HUT.

      Defendants.

Case No. 16-cv-1313

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

INTRODUCTION

The Parties have filed a Joint Motion for Preliminary Approval of Class and Collective Action Settlement reached between Plaintiffs and Defendants. The Settlement Agreement and Release (ECF No. 179-1, "Agreement") provides for a total settlement payment of $2,000,000, inclusive of attorneys' fees and costs. The settlement is fair and reasonable, as it fully and adequately satisfies this Court's criteria for such settlements. As such, the Parties respectfully request that the Court preliminarily approve the Agreement, approve the Parties' Joint Stipulation for Class Certification Pursuant to FED. R. CIV. P. 23 (ECF No. 180), approve Plaintiff Wayne Meetz ("Plaintiff") as representative for the collective and Rule 23 classes, approve Hawks Quindel, S.C. as counsel for the classes ("Class Counsel"), approve the mailing of the Notices of Class Action Settlement (ECF No. 179-3,4,5)

and set forth the procedure by which the Parties may seek final approval of the Agreement.

STATEMENT OF FACTS

## I.     PROCEDURAL HISTORY

Plaintiff, Wayne Meetz, filed his Class and Collective Action Complaint against Defendant Wisconsin Hospitality Group, LLC ("WHG") on September 30, 2016. (ECF No. 1.) An amended complaint was filed on November 17, 2016 to add Defendant PH Hospitality Group, LLC ("PHHG"). (ECF No. 18, hereinafter "Complaint".) In the Complaint, Plaintiff alleged that Defendants had failed to properly pay him and employees working for Defendants at the mandated minimum wage rates by failing to adequately reimburse vehicle expenses in violation of the Fair Labor Standards Act and Wisconsin wage and hour laws. (ECF Nos. 1, 18.) Defendants responded and denied Plaintiff's allegations. (ECF Nos. 15, 23.)

Following Defendants' Answer to the Amended Complaint, the Parties negotiated a protective order and engaged in formal discovery – including Defendant's written discovery to a negotiated group of opt-in Plaintiffs and Plaintiff's written discovery and Fed. R. Civ. P. 30(b)(6) deposition of Defendants – in advance of the Parties' dispute regarding whether conditional certification of the collective class was appropriate in this matter. (Declaration of Attorney Summer H. Murshid ("Murshid Decl."), ECF No. 182, ¶ 2; Declaration of Attorney Brian C. Spahn ("Spahn Decl."), ECF No. 181, ¶ 2.)

On March 24, 2017, Plaintiff filed his motion to conditionally certify the 29 U.S.C. 216(b) collective class with declarations from forty-eight opt-in Plaintiffs in support of the motion. (ECF Nos. 43-94.) Plaintiff's conditional certification motion was fully briefed by the Parties over the course of March and April 2017. (ECF Nos. 96—109.) The Court granted Plaintiff's conditional certification motion with slight modifications on August 29, 2017. (ECF No. 110.) Shortly thereafter, Class Counsel sent notice to the putative collective action members which resulted in over 700 individuals asserting their claims under the FLSA in this matter. (Murshid Decl., ECF No. 182, ¶ 3.)

## II.    SETTLEMENT BACKGROUND

In early October 2017, the Parties submitted – and the Court subsequently granted – a joint stipulation amending the scheduling order to provide the Parties with time to engage in good faith settlement discussions. (ECF Nos. 127, 129.) In order to engage in productive settlement discussions, the Parties conferred regarding the discovery needed to allow Class Counsel to adequately evaluate the claims of the collective class and putative Rule 23 class members. (Murshid Decl., ECF No. 182, ¶ 4.) Plaintiff requested information regarding the collective and Rule 23 classes' hours worked as delivery drivers for Defendants, hourly rates paid for such work, reimbursement rates paid for vehicle expenses, deliveries made, and delivery miles driven in the statutory periods. (Murshid Decl., ECF No. 182, ¶ 5.)

Over the course of several months, Defendants produced a number of reports showing the deliveries made, approximate miles driven, and reimbursements paid

to delivery drivers at over seventy restaurants over the course of a substantial portion of the relevant statutory period. (Murshid Decl., ECF No. 182, ¶ 6.) By analyzing this data on a store-by-store basis and extrapolating across the entirety of the statutory period, Class Counsel determined reasonable estimates of the total deliveries, reimbursements paid, and miles driven at each store. (Murshid Decl., ECF No. 182, ¶ 7.)

Over the same timeframe, Plaintiff retained an expert to evaluate Plaintiff's average vehicle expenses incurred on a per-mile basis. (Murshid Decl., ECF No. 182, ¶ 8.) After Class Counsel surveyed several hundred opt-in Plaintiffs regarding their vehicle expenses, Plaintiff's expert used this raw data and other historical information to determine the average per-mile cost of vehicle expenses in the statutory period. (Murshid Decl., ECF No. 182, ¶ 9.) These per-mile costs were broken down on an annual basis to account for fluctuations in the costs of operating a vehicle over time. (Murshid Decl., ECF No. 182, ¶ 10.) Finally, Class Counsel applied its expert's per-mile cost to the estimated miles driven in the statutory period at each of Defendants' restaurants to determine the total vehicle costs incurred by the putative classes in the statutory period. After subtracting the total reimbursements paid (determined by multiplying deliveries in the statutory period by the per-delivery reimbursement rate paid), Class Counsel was able to reasonably calculate potential damages on a class-wide basis. (Murshid Decl., ECF No. 182, ¶ 11.) Shortly thereafter, the Parties exchanged their damages calculations in

advance of their first mediation session in mid-March 2018. (Murshid Decl., ECF No. 182, ¶ 12.)

Between March and July 2018, the Parties engaged in good-faith, arms-length settlement discussions about their differing evaluations of the potential claims in light of the facts and law in an effort to reach a fair and reasonable resolution of this matter. (Murshid Decl., ECF No. 182, at ¶ 13; Spahn Decl., ECF No. 181, at ¶ 3.) During this time, the Parties spent two days in mediation (one in March and one in May) but were unable to reach a resolution. (Murshid Decl., ECF No. 182, ¶ 14; Spahn Decl., ECF No. 181, ¶ 4.) After the May mediation date, the Parties continued to utilize the neutral, third-party mediator to facilitate settlement discussions, including discussions regarding the settlement amount and key settlement terms. (Murshid Decl., ECF No. 182, ¶ 15.) These facilitated conversations continued in good-faith over the course of June and July. (Murshid Decl., ECF No. 182, ¶ 16.)

On or around July 20, 2018, the Parties agreed in principal to settle this matter on a class-wide basis for $2,000,000 inclusive of attorneys' fees and costs to be paid out in installments between 2018 and 2020. (Murshid Decl., ECF No. 182, at ¶ 17; Spahn Decl., ECF No. 181, at ¶5) After notifying the Court that the Parties reached a settlement (ECF No. 174), the Parties worked diligently to reduce their agreement to writing and finalize the other necessary details for the settlement – including the language in the Notice(s) of Class Action Settlement, finalizing a *pro rata* allocation of the settlement funds amongst the classes' members, and other

documents necessary to memorialize their agreement. (Murshid Decl., ECF No. 182, at ¶ 18; Spahn Decl., ECF No. 181, at ¶6.)

As a part of the settlement terms, the Parties agreed to (and have filed) a Joint Stipulation for Certification of the FED. R. CIV. P. 23 and 29 U.S.C. 216(b) collective classes. (ECF No. 180.) For settlement purposes only, the Parties stipulated to certifying the following class:

<u>The Rule 23 Class</u>.

All persons who have worked as a delivery driver paid less than $7.25 per hour while delivering pizza for Wisconsin Hospitality Group, LLC and PH Hospitality Group, LLC d/b/a Pizza Hut between September 30, 2014 and February 20, 2018 whose names appear on Exhibit A to the Settlement Agreement.

(ECF No. 179-1.)

The Parties worked collaboratively to memorialize the settlement terms in the Agreement. (ECF No. 179-1.) The terms of the Agreement, stated briefly, are as follows:

– There is a $2,000,000 Settlement Fund to be divided into a $70% Wisconsin Settlement Fund and a $30% FLSA Settlement Fund, ***after*** accounting for attorneys' fees and costs and the allocation of service payments to Plaintiff Meetz and other opt-in Plaintiffs who participated in discovery.

– For settlement purposes only, the Parties agree to stipulate to certify a FED. R. CIV. P. 23 Class Action; said stipulation has been filed herewith. (ECF No. 180.)

- Payments will be made in gross installments of $700,000 by December 1, 2018; $700,000 by July 1, 2019; and $600,000 by June 1, 2020.

- To waive FLSA claims as alleged in the Complaint, a FLSA collective class member must timely and validly complete and return a consent form in response to one of the notices provided for in the Agreement. Filing a consent in response to any such notice (or any time prior in the course of this litigation) entitles that individual to his/her full *pro rata* portion of the FLSA Settlement Fund. If a class member has a claim under the FLSA collective class and has timely and validly completed and returned the consent form, such class member will receive his or her *pro rata* portion of the FLSA Settlement Fund in an amount not to fall below the figure set forth for such individual in Exhibit A to the Agreement. Any putative member of the FLSA collective class that has already asserted this/her FLSA claims by causing a consent to be filed in this matter need not file another consent form in response to any of the Agreement's subsequent notices.

- If a class member does not exclude him/herself from the settlement in compliance with the opt-out and exclusion procedures set forth in the Agreement, he or she will be entitled to at least his or her *pro rata* portion of the Wisconsin Settlement Fund in an amount not to fall below the figure set forth for such individual in Exhibit A to the Agreement.

- If a class member does not file a timely consent form in response to the notices provided pursuant to the Agreement, then his or her share from the FLSA Settlement Fund will revert to Defendants. However, such reverter will not occur until after all notice periods provided under the Agreement have closed. No person that fails to file a consent to join their FLSA claims in this matter shall be deemed to have effectuated a release of FLSA claims under the Agreement.

- Any Rule 23 Class settlement funds that are not paid due to an individual's failure to timely cash such settlement checks or timely exclude him/herself from the settlement, shall revert to Defendants. Such individuals who exclude themselves from the Rule 23 Class settlement shall not be deemed to have released their Wisconsin wage and hour claims as provided by the Agreement;

- Any FLSA settlement funds that are not paid due to an individual's failure to timely cash such settlement checks or timely opt-in to the collective class, shall be paid to the Parties' elected Cy Pres recipient, The Employee Rights Advocacy Institute for Law and Policy.

- Plaintiff will receive a service payment of $25,000.00 from the Settlement Fund in light of his efforts in bringing this matter on behalf of other similarly-situated individuals and obtaining a recovery for such individuals.

– Opt-in Plaintiffs Garrett Malin, Dustin Long, Troy Ness, Elizabeth Hernandez, Chris Horneck and Zachary Bertrand ("Service Payment Recipients") will each receive a service payment in the amount of $1,500 from the Settlement Fund in recognition of their assistance with responding to WHG discovery requests. Class Counsel will petition for a payment of $666,666.67 in attorneys' fees and $123,074.67 in costs incurred in this matter.

This Agreement is fair and was reached at arm's length and in recognition of the risks faced by all Parties. (Murshid Decl., ECF No. 182, at ¶ 19; Spahn Decl., ECF No. 181, at ¶ 7.) The settlement is structured to maximize payment to participating Class Members as there is no claims process to participate in the Rule 23 Class portion of the settlement. (Murshid Decl., ECF No. 182, ¶ 20.) The Class notices proposed by the Parties adequately inform the class members of their right to participate in the settlement, to exclude themselves from the settlement, and to object to the settlement, as well as the legal implications of each of these actions. (ECF No. 179-3,4,5.) Because the settlement is fair and was reached by the Parties at arm's length, the Parties jointly request that the Court grant preliminary approval of the Agreement and allow Class Counsel to mail the class notices and consent form attached as Exhibits to the Agreement.

ARGUMENT

I. Preliminary approval of the Agreement is appropriate.

    A. The criteria for preliminary approval have been satisfied.

Resolution of class action litigation by settlement is favored by the federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996). Some courts have found that employees can bargain, waive, or modify their right to recovery under the FLSA only if the parties agree to the terms of the settlement and the court approves the settlement as a fair and reasonable resolution of the bona fide dispute over alleged violations of the FLSA provisions, and the settlement is entered as a stipulated judgment. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Similarly, the settlement of a FED. R. CIV. P. 23(b)(3) class action may be approved only if: (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. FED. R. CIV. P. 23(e).

In reviewing a proposed settlement agreement, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers National Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted). Other factors the courts are to consider are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to

withstand greater judgment; and the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Preliminary approval of a class action settlement allows putative class members to receive notice of the proposed settlement terms and the date and time for the fairness hearing at which putative class members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement agreement may be presented. *See* Manual for Complex Litigation at §§ 13.14, 21.632.

             1.    The proposed Agreement is fair, reasonable, and adequate.

The Agreement's terms outlined above are fair and reasonable for the Parties. Real disputes exist between the Parties as to whether liability exists in this case and, if liability were proven, the extent of the damages. Specifically, the Parties disagree on whether Defendants' methods for reimbursing Plaintiffs' vehicles expenses violated the FLSA and/or Wisconsin law, the manner of computing reasonable reimbursement rates underlying the computation of Plaintiffs' damages, Plaintiffs' ability to prove a willful violation of the FLSA, and the amount/extent of any award of liquidated damages and/or civil penalties due to the classes' members. (Murshid Decl., ECF No. 182, at ¶ 21; Spahn Decl., ECF No. 181, at ¶ 8.)

The claims are relatively small for each individual class member as they depend on each class members' length of employment, hours spent performing work as a delivery driver for Defendants, and the number of miles driven in performance

of his/her work as a delivery driver. (Murshid Decl., ECF No. 182, ¶ 22.) Under the Agreement, the average recovery per class member is $447.35 after deducting the service payments and consideration for attorneys' fees and costs. (Murshid Decl., ECF No. 182, ¶ 23.) This amount constitutes a substantial recovery in light of the type of claim, Class Counsel's evaluation of the classes' payroll and time records, and the risks of continued litigation. (Murshid Decl., ECF No. 182, ¶ 24.) Beyond this, the Agreement is structured to maximize payment to participating class members by automatically issuing payments for class ,embers who do not exclude themselves from the Rule 23 Class because these payments are made without any requirement to file a claim. (ECF No. 179-1.)

   **2.** **The Agreement was reached through extensive arm's length negotiations.**

Despite the Parties' divergent views regarding the Plaintiff's assertions in his Complaint, they were able to work toward a compromise in this matter and negotiate at arm's length to resolve the claims of Plaintiff and putative class members. (Murshid Decl., ECF No. 182, ¶ 25; Spahn Decl., ECF No. 181, at ¶ 9.) The Parties engaged in two days of mediation over the course of two months while exchanging data underlying their competing experts' valuations in between. (Murshid Decl., ECF No. 182, ¶ 26.) Even after mediation sessions ended, the Parties continued to engage the neutral mediator to assist in identifying and compromising various terms and conditions of the settlement over the course of June and much of July. (Murshid Decl., ECF No. 182, ¶ 27.)

**3.** The settlement fund provides adequate relief for the settlement classes and the proposed allocation method equitably divides the settlement funds.

The proposed settlement allocation, attached as Exhibit A to the Agreement, lists the amount of the Settlement Fund that each participating settlement class member will receive. (ECF No. 179-2.) As stated above, the average recovery is $447.35 after attorneys' fees, costs, and service payments. (Murshid Decl., ECF No. 182, ¶ 23.) This is a substantial recovery in light of the type of claim and a fair amount given the risks in the case, including the risk that Plaintiff and putative class members would receive nothing at trial. (Murshid Decl., ECF No. 182, ¶ 28.)

The settlement allocation has been calculated in the most precise manner possible. (Murshid Decl., ECF No. 182, ¶ 29.) Starting with Defendants' records of the Plaintiffs' hours worked as delivery drivers, Class Counsel was able to compare those hours worked to Defendants' delivery data for each store and extrapolate an estimated number of miles driven per workweek in the statutory period. Those miles were then broken down to weekly averages for each class member for whom data was provided. (Murshid Decl., ECF No. 182, ¶ 30.)

Given that Plaintiff's expert's per-mile reimbursement rates varied from year to year, Class Counsel was then able to determine each class members' workweeks in each year within the statutory period and multiply those yearly workweeks by the average number of miles driven per workweek to determine the total estimated miles driven in each year. Total estimated miles per year were multiplied by the difference between Plaintiff's expert's per-mile reimbursement rate and Defendants' actual per-mile reimbursement rates to determine total damages per year.

Liquidated damages and civil penalties were also factored in according to whether a particular workweek fell within the FLSA's potential three-year statutory period or within Wisconsin law's two-year period. Each individual's total potential damages were tallied for the entire statutory period divided by projected total damages to determine that individual's pro-rata percentage of the potential damages. That percentage was multiplied by the portion of the net settlement funds to determine each person's *pro rata* portion of the settlement. (Murshid Decl., ECF No. 182, ¶ 31.)

Wherever data was unavailable, Class Counsel used averages from the class-wide data to approximate damages for particular class members. (Murshid Decl., ECF No. 182, ¶ 32.) This method is the most reasonable and fair method to allocate damages to the class members as it allocates the settlement based on the hours worked by each person and their specific dates of employment in the statutory period or a reasonable approximation where such data was not available. (Murshid Decl., ECF No. 182, ¶ 33.) Each class member's *pro rata* portion was divided into three, proportional payments according to the agreed-upon installments and split amongst W2 wage and 1099 income as provided by the FLSA and Wisconsin law. (Murshid Decl., ECF No. 182, ¶ 34.)

4.    The requested service payment is reasonable.

The Seventh Circuit recognizes that enhancement/service payments are appropriate in circumstances such as those presented by this case and look to the following relevant factors: actions plaintiff took to protect the class's interests, degree to which the class benefitted from those actions, and the amount of time and effort plaintiff expended in pursuing litigation. *Cook v. Niedert*, 142 F.3d 1004, 1016

(7th Cir. 1998). The proposed award in this case is reasonable in comparison to awards approved by other courts in this Circuit. *See Berger v. Xerox Corp. Ret. Income Guarantee Plan,* No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819, at *7 (S.D. Ill. Jan. 22, 2004) (awarding $20,000.00 to the named plaintiff).

The Agreement provides that Plaintiff Meetz and opt-in Plaintiffs Garrett Malin, Dustin Long, Troy Ness, Elizabeth Hernandez, Chris Horneck, and Zachary Bertrand will receive a service payment in recognition of their efforts as well as the benefit each class member derived from their individual efforts. (ECF No. 179-1, ¶ 22.) A service payment of $25,000.00 to Plaintiff Meetz is fair and reasonable given the efforts undergone and risks assumed by Plaintiff Meetz in initiating litigation and securing a recovery on behalf of himself as well as on behalf of the nearly 2,500 individuals in the classes. (Murshid Decl., ECF No. 182, ¶ 35.) Plaintiff Meetz took the risk to initiate the lawsuit on the behalf of the Classes' Members and has consistently provided information to Class Counsel and represented the classes' interests over nearly two years since litigation was initiated. (Murshid Decl., ECF No. 182, ¶ 36.)

Similarly, service payments to opt-in Plaintiffs Malin, Long, Ness, Hernandez, Horneck, and Bertrand of $1,500.00 each are fair and reasonable given their efforts in providing written discovery responses in this matter. (Murshid Decl., ECF No. 182, ¶ 37.) Those responses proved critical to the Parties' ability to evaluate the claims and were instrumental in Plaintiff's conditional certification motion which was ultimately granted and led to notice being sent to the entire

collective class. (Murshid Decl., ECF No. 182, ¶ 38.) Those same responses were also important to the evaluation of the Rule 23 Class's claims. (Murshid Decl., ECF No. 182, ¶ 39.)

The total amount of the services payments, which are 2.9% of the net Settlement Fund after attorneys' fees and costs, is reasonable and well within the range of similar service payments approved by courts in the Eastern District. *See Johannsen v. Argon Industries*, E.D. Wis. Case No. 2:15-cv-01080-JPS, ECF No. 70 (July 15, 2016) (order approving enhancement awards totaling 10.45% of class fund with 6.8% going to the named plaintiff); *Johannsen v. Lyall Manufacturing*, E.D. Wis. Case No. 2:15-cv-00897-DEJ, ECF Nos. 45, 45-1 (September 12, 2016) (order approving FLSA settlement agreement with 10% of the class funds going to the named plaintiff); *Hernandez v. La Fuente Ltd.*, E.D. Wis. Case No. 2:13-cv-00366-RTR, ECF No. 102 (November 15, 2014) (order approving FLSA settlement agreement with enhancement payments totaling 6.1% of the class funds with 3.8% going to the named plaintiff); *McReynolds v. Merrill Lynch*, N.D. Ill. Case No. 1:05-cv-6583, ECF No. 616 (Dec. 6, 2013) (order approving class $250,000 service payment to each Class representative and $75,000 to each of the six members of the steering committee). Accordingly, the Parties submit that the service payments to Plaintiff Meetz and opt-in Plaintiffs Malin, Long, Ness, Hernandez, Horneck, and Bertrand are fair and reasonable under the circumstances and request that the Court approve the proposed service payments.

      **5.**    The requested attorneys' fees and costs are reasonable.

Attorneys' fees and costs are recoverable under the FLSA and state wage and hour statutes at issue in this litigation. *See* 29 U.S.C. § 216(b); Wis. Stat. §109.03(6). Class Counsel accepted the case on a 1/3 contingency basis, exclusive of costs, bearing the entire risk in the event that there was no recovery resulting from either a failure of proof at trial, or Defendants' inability to satisfy a judgment. (Murshid Decl., ECF No. 182, ¶ 40.) When Class Counsel accepted this case, it was unknown whether this matter could be resolved early in the litigation, or if substantial motion practice and trial would be necessary. (Murshid Decl., ECF No. 182, ¶ 41.) Importantly, under the terms of the legal services agreement, Class Counsel would receive no payment for attorneys' fees or reimbursement for costs incurred if the litigation was unsuccessful. (Murshid Decl., ECF No. 182, ¶ 42.) Despite this risk, Class Counsel has incurred considerable costs in expert fees and other costs as a result of their advocacy on behalf of the class. (Murshid Decl., ECF No. 182, ¶ 43.)

The Court should award attorneys' fees as a percentage of the total settlement because that arrangement, based on Class Counsel's agreement with the Plaintiff, most closely replicates the market for the legal services provided. *See Webb v. Midwestern Wheels,* 15-cv-1538, ECF No. 40 (June 9, 2016) (order approving 1/3 contingency fee in multi-plaintiff FLSA settlement); *Adams, et al. v. Walgreen Co. d/b/a Walgreens*, 14-cv-1208-JPS, ECF No. 35 (July 15, 2015) (same); *Hernandez v. La Fuente, Ltd.*, 13-CV-366-RTR, ECF No. 102 (E.D. Wis. Oct. 15, 2014) (same); *Beierle et al. v BR Metal Technology*, 13-CV- 01280-CNC, ECF No. 40

(E.D. Wis. June 26, 2014) (same); *Trujillo et al., v. Saelens' Corp.*, 13-CV-1096-JPS, ECF No. 25, 37 (E.D. Wis. May 15, 2014) (same); *McKinney v. Med Group Transportation, LLC, et al.*, 13-CV-222-JPS, ECF Nos. 89, 90, 91, 92, (E.D. Wis. Feb. 7, 2014) (same); *Denk v. Pine Ridge Assisted Living et al.*, 3:11-cv-00210-wmc, ECF No. 83 (W.D. Wis. August 7, 2012) (same); *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate'"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (33.33% award consistent with norms of wage litigation).

Accordingly, Class Counsel seeks one-third of the total value of the settlement as compensation for its fees. (ECF No. 179-1.) The total value of the settlement is $2,000,000, and 33.33% of that amount is $666,666.67. (Murshid Decl., ECF No. 182, ¶ 44.) The Agreement provides for attorneys' fees of $666,666.67. (ECF No. 179-1) An award of 33.33% falls within the normal percentage range of attorneys' fee awards approved by courts. *See* 4 Newberg on Class Actions § 14:6, p. 558 (4th ed.15 2002) (citing a 1996 Federal Judicial Center Study finding that fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement). Class Counsel faced significant risks in this litigation, based upon the strength of the legal and factual defenses asserted by Defendants as well as the risks incident to obtaining satisfaction of any future judgment. (Murshid Decl., ECF No. 182, ¶ 45.)

As provided for in the Agreement, Class Counsel will file with the Court a more detailed brief in support of its request for attorneys' fees by September 21, 2018.so that the Court will be able to approve Class Counsel's fees and costs at the Fairness Hearing.

II.   Because the putative Rule 23 class satisfies the standards required by the courts, the Parties' FED. R. CIV. P. 23 class should be certified.

A.   The putative class satisfies the implicit standard of definiteness required by Courts.

In addition to the FED. R. CIV. P. 23(a) and 23(b) standards, courts require that the implicit standards for certification be met. The proposed class definition must be definite – that is, ascertainable, precise and objective. *Blihovde v., St. Croix,* 219 F.R.D. 607, 614 (W.D. Wis. 2003). Plaintiff must also be a member of the class he or she represents. The members of the Rule 23 Class are definite. The Parties have identified these individuals, have produced discovery and payroll records regarding them, and have calculated their potential damages. The Rule 23 Class definition does not include any subjective criteria. The Rule 23 Class includes all hourly employees who worked for Defendants as delivery drivers at a sub-minimum wage hourly rate during a specific period of time. Plaintiff is a member of the class he represents, is a former employee of Defendants, and was subject to the pay practices at issue in the Complaint. (Murshid Decl., ECF No. 182, ¶ 46.)

B.   Plaintiff has satisfied the FED. R. CIV. P. 23(a) standards of numerosity, commonality, and typicality and, with his counsel, will fairly and adequately protect the interests of the Rule 23 Class.

1.   The Parties' proposed Rule 23 Class satisfies the numerosity requirement of FED. R. CIV. P. 23(a).

The Seventh Circuit has held that the numerosity requirement of FED. R. CIV. P. 23(a) requires a showing that the number of members in the proposed class is so large as to make joinder impracticable. *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 663-4 (7th Cir. 2004). Based on information provided by Defendants, there are nearly 2,500 members of the Rule 23 Class. (Murshid Decl., ECF No. 182, ¶ 46.) It would be administratively untenable to join each individual class member in this action and, therefore, numerosity has been met in this matter.

> **2.** As all of Defendant's hourly employees were subject to the same pay practices, common questions of law and fact predominate and therefore, satisfy the commonality requirement.

Rule 23(a) requires a finding that there are questions of fact or law which are common to the class. FED. R. CIV. P. 23(a)(2). This requires plaintiffs to show that they have all suffered the same injury, a "common contention" such that resolving the common issue will resolve all of the included claims in a single stroke. *Wal-Mart v. Dukes,* 131 S. Ct. 2541, 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (internal citations omitted)); *Williams-Green v. J. Alexander's Rests., Inc.,* 277 F.R.D. 374 (N.D. Ill. 2011) ("[Plaintiff] has demonstrated that her claims . . . arise from a common nucleus of fact based upon standardized conduct and, therefore, has satisfied the commonality requirement of Rule 23(a)(2).").

Questions common to the Class include:

- Whether Defendant's manner of reimbursing the Rule 23 Class for vehicle expenses incurred in the course of performing their duties as delivery drivers violated Wisconsin law; and

- What measure of damages the Rule 23 Class would be entitled to recover – in the event that violations were proven – given uncertainties in Wisconsin law.

The common questions of law and fact, as alleged in the Complaint, are sufficient to meet the FED. R. CIV. P. 23(a)(2) standard as they arise from a common nucleus of operative fact, namely Defendants' practice for reimbursing vehicle expenses.

> 3. Plaintiff's claims satisfy the typicality requirement as they are legally and factually similar to putative Rule 23 Class members' claims.

The typicality requirement is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory. *De La Fuente v. Stokley-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). "The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs . . . who can advance the same factual and legal arguments may be grouped together as a class." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 341 (7th Cir. 1997). The typicality requirement, however, focuses only on whether the plaintiff's claim is based on the same legal theory and arises from the same course of conduct that gives rise to the claims of the other members of the proposed class. *Rosario*, 963 F.2d at 1018. Typicality focuses on the defendant's actions leading to the alleged violation and not on possible particularized defenses

against certain individual class members. *Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996).

Plaintiff is a member of the Rule 23 Class. The legal theories advanced by Plaintiff—that Defendants allegedly improperly paid him a flat, per-delivery reimbursement rate that failed to adequately account for vehicle expenses incurred in the performance of his job and improperly decreased his hourly wage below the mandated minimum wage rate — applies equally to Plaintiff and the class members he seeks to represent. Because Plaintiff's claims involve the same legal theories and arise from the same course of conduct that gives rise to the claims of the Rule 23 Class members, the typicality element has been satisfied.

> **4.** Plaintiff and Class Counsel will fairly and adequately protect the interests of the Rule 23 Class.

The final inquiry under Rule 23(a) consists of two parts: (1) the adequacy of Class Counsel; and (2) the adequacy of representation provided in protecting the different, separate and distinct interests of the Rule 23 Class members. *Retired Chicago Police Ass'n v. Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (*en banc*)).

Hawks Quindel, S.C. seeks to represent the Rule 23 Class. Hawks Quindel, S.C., has served as class counsel in over one-hundred similar wage and hour disputes in front of this Court, as well as the Western District of Wisconsin, and is experienced in handling complex wage and hour class actions. (Murshid Decl., ECF No. 182, ¶ 47.)

Further, Plaintiff does not have any antagonistic or conflicting interests with the class members he seeks to represent. Plaintiff allegedly has been injured by the same conduct as the class members he seeks to represent and seeks compensation on his own behalf and on behalf of the class members he seeks to represent for those injuries. Plaintiff has thus satisfied the requirements of FED. R. CIV. P. 23(a).

C. Plaintiff has satisfied the FED. R. CIV. P. 23(b) standards because common questions of law and fact predominate over any individualized inquiries and because judicial economy is enhanced by class treatment.

In addition to meeting the FED. R. CIV. P. 23(a) standards, Plaintiff must satisfy one of the FED. R. CIV. P. 23(b) standards. Where, as is the case in this matter, Plaintiff seeks monetary damages, the inquiry properly focuses on FED. R. CIV. P. 23(b)(3). *Blihovde*, 219 F.R.D. at 619.

Under FED. R. CIV. P. 23(b)(3), certification of the class is proper where questions of law or fact common to the entire class predominate over individual claims and a class action is superior to other methods for fair and efficient adjudication. FED. R. CIV. P. 23(b). The Seventh Circuit has summarized this standard by stating that, "class action treatment is appropriate and permitted by Rule 23 when judicial economy from the consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for a decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.,* 319 F.3d 910, 911 (7th Cir. 2003).

1. Common questions of law or fact predominate.

The question to be answered here is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Blihovde*, 219 F.R.D. at 620 (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). When challenging a uniform policy, the validity of those policies predominate over individual issues and class certification is appropriate. *Id.* (*citing Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 147 n. 20 (1982)). Further, where a uniform policy is challenged, individual inquiries into the application of that policy to an individual within the class will not supplant predominance. *Id.*

Through this settlement, the Parties have resolved a dispute regarding Defendants' common method of reimbursing Plaintiffs for vehicle expenses incurred in the performance of their work, which Plaintiff alleges violated the law. Because the practices were uniformly applied to the class members, and because this settlement resolves the Parties' disputes over these practices, common issues predominate in this matter, and the FED. R. CIV. P. 23(b)(3) standards have been met.

> 2.  Class resolution is the superior method of resolving these claims.

The final FED. R. CIV. P. 23(b)(3) requirement, superiority, also has been met in this case. In evaluating superiority, the Court considers (1) the interests of the class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of concentrating the claims in one forum; and (4) the difficulty of managing the class. FED. R. CIV. P. 23(b)(3).  Neither Plaintiff nor Defendants are aware of any other

pending litigation regarding this controversy. (Murshid Decl., ECF No. 182, ¶ 48; Spahn Decl., ECF No. 181, ¶ 10.)

The desirability of class resolution in this case is readily apparent by the size of the class represented and by the nature of the alleged violation. The challenged policy allegedly harmed each member of the putative class; however, the putative class members' individual interests in prosecuting these claims is small given the relatively small monetary value of each individual's claim. To the extent that any class member would prefer to litigate his/her claim separately, the class mechanism will provide him/her an opportunity to opt out of the Rule 23 Class and do so. Moreover, the size of each class member's claim is relatively small such that individual adjudication of the claims is practically inefficient and unlikely.

Because a class is a superior method for resolving this dispute, Plaintiff requests that this FED. R. CIV. P. 23 class be certified.

> **D.**     The Parties' proposed notice and manner of service are appropriate.

In order to protect the rights of absent members of a settlement class, the Court must provide the best notice practicable to all members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1985). Such a notice should define the class, describe clearly the options open to the class members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorneys' fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the class members to calculate individual recoveries, and prominently display the address

and telephone number of class counsel and the procedure for making inquiries. Manual for Complex Litigation at § 21.312.

The class notices, attached as Exhibits B through D to the Parties' Agreement, meet each of the above criteria and allow the collective class members an opportunity to assert their claims in advance of each settlement installment. (ECF No. 179-1.) Finally, Class Counsel has retained a Third-Party Administrator to streamline and facilitate the notice and payment process for the class members throughout the payment process. (Murshid Decl., ECF No. 182, ¶ 49.)

<u>CONCLUSION</u>

For the above stated reasons, the Parties jointly request that the Court grant preliminary approval of the Agreement, approve the Parties' Joint Stipulation for Collective Class Certification pursuant to FED. R. CIV. P. 23 (ECF No. 180), approve Plaintiff Wayne Meetz as representative for the classes, approve Hawks Quindel, S.C. as counsel for the classes, and approve the mailing of the notices of class action settlement (ECF Nos. 179-3, 179-4, and 179-5).

Dated this 29th day of August, 2018.

Respectfully Submitted,                  Respectfully Submitted,

 s/   Brian C. Spahn                      s/   Summer H. Murshid
Brian C. Spahn, SBN 1060080              Larry A. Johnson, SBN 1056619
bspahn@gklaw.com                          ljohnson@hq-law.com
Josh Johanningmeier, SBN 1041135         Summer H. Murshid, SBN 1075404
jjohanningmeier@gklaw.com                 smurshid@hq-law.com
Erin M. Cook, SBN 1074294                Timothy P. Maynard, SBN 1080953

mcook@gklaw.com
Rebeca Lopez, SBN 1084842
rlopez@gklaw.com

Godfrey & Kahn, S.C.
833 East Michigan Street, Ste 1800
Milwaukee, WI 53202-5615
(414) 273-3500 (office)
(414) 223-5198 (facsimile)

Attorneys for Defendant

tmaynard@hq-law.com

Hawks Quindel, S.C.
222 E Erie Street
Suite 210
P.O. Box 442
Milwaukee, WI 53202
(414) 271-8650 (office)
(414) 271-8442 (facsimile)

Attorneys for Plaintiffs

19364706.2